563 P.2d 39

**Leo T. HAEG, Appellant,**

v.

**CITY OF POCATELLO, a Municipal Corporation, Respondent.**

**No. 11941.**

Supreme Court of Idaho.

April 19, 1977.

Gus Carr Anderson, Pocatello, for appellant.

Hugh C. Maguire, Jr., Pocatello (Martin R. Ward, Pocatello, on oral argument), Maguire, Kisling & Ward, Pocatello, for respondent.

BISTLINE, Justice.

Plaintiff, Leo V. Haeg, a diabetic, went into insulin shock while operating his car, became unconscious, and was then arrested by City of Pocatello (City) police officers. Haeg's action against the City is premised on a claim of false arrest, assault and battery, and City's negligence in hiring the police officer who allegedly committed the tortious acts. Alleging no special damages, he seeks substantial general damages. On City's motion, the action was dismissed. City's motion was based on the "exceptions" provision of the Idaho Tort Claim Act (ITCA) of 1971, applicable portions of which are:

> "I.C. § 6–904. A governmental entity shall not be liable for any claim which:
> "1. Arises out of any act or omission of an employee of the governmental entity exercising due care, in the execution of a statute or regulation, whether or not the statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused.
>
> \* \* \* \* \* \*
>
> "4. Arises out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."

I.C. § 6–903(a) is the section of ITCA which declares liability:

> "Except as otherwise provided in this act, every governmental entity is subject to liability for money damages arising out of its negligent or otherwise wrongful acts or omissions and those of its employees acting within the course or scope of their employment or duties, whether arising out of a governmental or proprietary function, where the governmental entity if a private person or entity would be liable for money damages under the laws of the state of Idaho."

The trial court held that application of § 6–904 left Haeg without any remedy against the City, saying:

> "Admittedly, Section 6–902 and 6–903 giveth, but Section 6–904 taketh away. The Court must agree with counsel that the exemptions in 6–904 leave a plaintiff such as the plaintiff in the present case, without any remedy for abuse, mistreatment, false imprisonment, etc., by an agent of a governmental unit, but the Legislature, in its infinite wisdom, has decided that this is the way it should be."

Haeg's constitutional challenge to the Idaho Tort Claims Act in the lower court was first based, only on his contention (raised in argument in district court, but not pleaded) that art. III, § 19, Idaho Constitution, prohibited the legislature from "passing 'local' or 'special' law, . . . [for] limitation of civil or criminal actions." The trial court ruled "that the legislation is not local or special in that it applies to all governmental subdivisions of the State" and dismissed the action.

Haeg does not argue art. III, § 19 here, nor did he argue it further in the trial court. Only after the dismissal, on a motion for reconsideration, did Haeg for the first time mention art. I, § 18, of the Idaho Constitution, and § 1 of the XIV amendment to the United States Constitution, which he urged had been violated by the order of dismissal. Under his general assignments of error in this Court, he cites as his supporting authority those two constitutional provisions, art. I, § 18, of the Idaho Constitution:

"Courts of justice shall be open to every person and a speedy remedy afforded for every injury of person, property or character, and right and justice shall be administered without sale, denial, delay, or prejudice."

and that part of § 1 of the XIV amendment to the United States Constitution, reading:

". . . No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The sole argument stated in Haeg's brief in support of his assignments of error is that, because this Court in *Smith v. State*, 93 Idaho 795, 473 P.2d 937 (1970), abolished governmental immunity, it was not constitutionally permissible, that "the legislature in turn saw fit to reenact governmental immunity and so violated the decision of the Court in *Smith v. State, supra,* even though the court stated that the legislature might so act." Haeg presents us with no authority in support of this contention. His argument is premised upon a faulty reading of this Court's decision in *Smith* and a misunderstanding of the proper roles of the legislative and judicial branches of government.

In *Smith* this Court did not approach the doctrine of governmental immunity as being in violation of either the federal or state constitutions. Rather, all that the Court there did was to place Idaho in step with the times.

"The rule of law, known as sovereign immunity, was adopted by the Idaho Supreme Court early in its statehood. *Hollister v. State*, 9 Idaho 8, 71 P. 541 (1903). . . . [T]he doctrine did not 'rest upon the narrow ground that there are no means by which such obligations can be enforced, but on the larger ground that no obligations arise therefrom.' *Davis v. State, supra,* 30 Idaho 137 at 143, 163 P. 373 at 375.

\* \* \* \* \* \*

". . . Man has landed on the moon and yet this Court is asked to apply a proposition of law which is unjust, outmoded, and illogical not only when measured by current times, but also when viewed in the light of human affairs in 1903." *Smith v. State, supra,* 93 Idaho at 800–01, 473 P.2d at 942–43.

This Court observed that its own independent power to abolish had previously been exercised when "this Court abolished the doctrine of sovereign immunity in contract actions." Nevertheless, we went on to note "the broad coexistent authority of the legislature to act in this field."

Then, after noting that "the rule of sovereign immunity is of judicial or common law origin and this Court has the power to modify it so long as the legislature has not acted," we borrowed from the Arkansas Supreme Court to say:

" ' \* \* \* Although the field of the common law is not primarily the Legislature's problem, it is the primary concern of this Court. Accordingly, the Court, not the Legislature, should extirpate those rules of decision which are admittedly unjust, for it is to the judiciary that the power of government is given to provide protection against individual hurt. . . .' " *Smith v. State, supra,* 93 Idaho at 805, 473 P.2d at 947.

Even so, the Court did not rule that its abolition of sovereign immunity was to take effect immediately. Making note of legislative consideration of "the question of abolition of the state's sovereign immunity" at the Fortieth Idaho Legislature, we saw evi-

**318**

dence that "the legislature is aware of the injustice created by the doctrine of sovereign immunity," and stated our conviction that "[i]deally the subject should be dealt with by the legislature by a comprehensive legislative enactment." Consequently, we restricted the application of the *Smith* decision to the cases then before us, and postponed the general effective date of its holding until 60 days subsequent to the adjournment of the First Regular Session of the Forty-first Legislature, unless legislation was thereat enacted "with respect to the abolition of the sovereign immunity of the state." Legislation *was* enacted in this respect.

For the future, our posture is necessarily different. The situation is simply not the same where the legislature has enacted the doctrine of sovereign immunity by statute as it is prior to the time when the legislature has entered the field at all. Thus, as to a contention in *Newlan v. State*, 96 Idaho 711, 535 P.2d 1348 (1975), which is essentially the argument of Haeg here, that the ITCA is not in harmony with the humanitarian policy observations of this Court in *Smith*, we must repeat that "if the statute is unwise, power to correct is legislative not judicial." *Newlan v. State, supra*, 96 Idaho at 716, 535 P.2d at 1353. Unless such policy observations themselves rise to the level of constitutional objections, the statute must stand. It is clear that *Smith* itself did not hold that the abrogation of sovereign immunity was *constitutionally* required. *Newlan v. State, supra*, 96 Idaho at 715, 535 P.2d 1348.

In *Brown v. Wichita State University*, 219 Kan. 2, 547 P.2d 1015 (1976), the Kansas Supreme Court put the question to itself which is here put to us by Haeg, thus:

> " 'Where the court abrogates judicially imposed governmental immunity does the Legislature have the constitutional authority to reimpose governmental immunity?' "

The court answered the question in the affirmative, going on to point out the significance of its invitation for legislative action:

> "The court, in effect, requested legislative judgment. It has been given. Regardless of the personal views of members of the court, the legislative policy has been clearly enunciated and should be accepted, *unless the legislative policy is found to be unconstitutional.*" (Emphasis added.) *Brown v. Wichita State Univ., supra,* 547 P.2d at 1021.

Since the time of *Smith* and the enactment of the ITCA, the Court has entertained several challenges to the constitutionality of the ITCA, and certain provisions of that Act have been specifically upheld as constitutional. *Newlan v. State, supra; Independent School Dist. of Boise City v. Callister,* 97 Idaho 59, 539 P.2d 987 (1975). In the present case, we do not understand appellant to be raising any question as to whether the Act, or any sections thereof, are or are not unconstitutional as viewed in light of those constitutional provisions which Haeg first relied upon when he asked for rehearing on dismissal of his complaint.

Judgment is affirmed. Costs to respondent.

McFADDEN, C. J., and DONALDSON, SHEPARD and BAKES, JJ., concur.