# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 48291

PEYTON GIFFORD and MOLLIE GABALDON, individually, as Patrons of West Ada Joint School District #2 and on behalf of and as Guardians Ad Litem of their minor child, John Doe G, and on behalf of all other similarly situated Parents, Patrons of, and children enrolled (past, present, and future) in Kindergarten in West Ada School District, Idaho's 114 other School Districts, and 54 Charter Schools,

    Plaintiffs-Appellants,

v.

WEST ADA JOINT SCHOOL DISTRICT #2,

    Defendant-Respondent.

Boise, September 2021 Term

Opinion filed: November 22, 2021

Melanie Gagnepain, Clerk

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Peter G. Barton, District Judge.

The decision of the district court is <u>affirmed in part</u>, <u>reversed in part</u>, and the case is <u>remanded</u> for further proceedings.

The Huntley Law Firm, PLLC, Boise and Wood Law Group, PC, Idaho Falls for Appellants. Jason Wood argued.

Anderson Julian & Hull, Boise, for Respondent. Brian Julian argued.

---

MOELLER, Justice.

Peyton Gifford and Mollie Gabaldon ("Parents") filed a complaint as individuals, guardians ad litem for their son, and putative class representatives, alleging that the West Ada Joint School District #2 ("West Ada") illegally charged tuition fees for the second half-day of kindergarten instruction. The district court dismissed Parents' complaint for lack of standing because Parents did not pay the allegedly illegal fees. On appeal, we hold that although the

1

district court properly concluded that Parents lack standing to pursue a claim based solely on an economic injury, it failed to consider whether Parents had standing to assert a second, discrete injury—loss of educational opportunity for their son. For the reasons set forth below, we conclude Parents have standing to pursue their educational claims.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Parents reside in the West Ada School District. They enrolled their son in kindergarten for the 2019–2020 academic year at Chief Joseph Elementary School of the Arts, a school within the West Ada School District. Parents desired to have their son enrolled in full-day kindergarten, but they learned on the day of registration that Chief Joseph Elementary offered only half-day kindergarten. While other schools in the district did offer full day kindergarten, Parents did not attempt to transfer their son to one of these schools, at least in part, because they could not afford the $260 per month in tuition that West Ada charged for the optional, second half-day of instruction. Parents have not personally paid any kindergarten fees but allege that West Ada has collected more than $8 million in second half-day kindergarten fees from other patrons between 2014 and 2020.

Parents filed a class action complaint in July 2019 alleging that West Ada's assessment of second half-day tuition fees violates the free public education provision in Article IX, section 1 of the Idaho Constitution. Parents' initial complaint sought the following relief:

1. Certification of both Plaintiffs and Defendants class actions for [sic] pursuant to IRCP 77.

2. Declaratory Judgment that school fees assessed and collected by the Defendants for Kindergarten constitute a Constitutional violation, deprivation of property without due process and/or taking of private property without just compensation, in violation of Article IX, Section 1 and Article I, Section 14 of the Idaho Constitution as well as the Fifth and Fourteenth Amendments to the U.S. Constitution.

3. Restitution, rebate or reimbursement of fees unconstitutionally assessed and collected[.]

4. An Order appointing a claims administrator to supervise the restitution of and payment of damages to each class member who makes a claim under a protocol and notice procedure to be proposed by counsel and approved by the Court[.]

Parents' complaint also stated that West Ada's conduct "violate[d] every anti-discrimination law and standard" by providing important educational enrichment to the children of patrons wealthy enough to afford second half-day fees, while denying the same to children of poorer patrons.

However, Parents did not allege an equal protection claim under the Fourteenth Amendment of the United States Constitution or Article I, section 13 of the Idaho Constitution.

In August 2019, Parents amended their complaint by adding the following paragraph requesting that the district court enter an order providing prospective relief for their son and similarly situated schoolchildren:

> An Order of this Court should be entered providing that following entry of Judgment the Defendant West Ada School District and Putative Defendant Schools shall immediately, and in future years, place the Plaintiff child and putative Plaintiff children in line to enroll in the second half day of kindergarten tuition free.

Though it is not apparent from their complaint, Parents clarified in the district court that they did not seek an order compelling Chief Joseph Elementary to begin offering full-day kindergarten; they only sought an order compelling the schools already offering full-day programs to stop collecting tuition fees for the second half-day, and to have their son placed "in line" for kindergarten at one of those schools.

In October 2019, Parents filed a motion for partial summary judgment and class certification. Following a hearing on that motion in January 2020, the district court issued an order denying Parents' motion. The district court explained it denied the motion because Parents lacked standing:

> Plaintiffs argue that fees for the additional half-day of kindergarten resulted in an unconstitutional taking from those who paid it. "Plaintiffs need only show that (1) the fee they were required to and did pay constituted 'property' within the meaning of the takings clause; and (2) the defendants did not have legal authority to assess the fee." Plaintiffs argue it "is incontrovertible that both requirements are met here," as the School District was not authorized to charge or collect tuition from the Plaintiffs for the second kindergarten session. Money may be considered property within the meaning of the takings clause. *Hill-Vu Mobile Home Park v. City of Pocatello*, 162 Idaho 588, 402 P.3d 1041 (2017).
> Here, Plaintiffs have not paid any tuition for full-day kindergarten. In *Joki* [*v. State*],[1] those plaintiffs paid money to the school district for fees associated

---

[1] To support their summary judgment motion below, Parents cited to findings of fact and conclusions of law made by District Judge Richard Greenwood in a case brought by Parents' counsel on behalf of other plaintiffs in 2012 in *Joki v. State*, 162 Idaho 5, 394 P.3d 45 (2017). There, Judge Greenwood held that certain school fees were unconstitutional. In their arguments before this Court, Parents assert that we "expressly affirmed" this holding by Judge Greenwood, thereby "squarely" determining that kindergarten "must be free." The merits of Parents' case are not at issue in this appeal, but we take this opportunity to correct Parents' misunderstanding of our decision in *Joki*. In *Joki*, we reviewed an order dismissing certain defendants from the action—an order entirely separate from Judge Greenwood's decision on the merits. *Id*. at 10–11, 394 P.3d at 53–54. We did not, in any manner, review Judge Greenwood's findings of fact and conclusions of law, which only addressed kindergarten fees in dicta.

with kindergarten. The relief sought by those plaintiffs was refund of the fees they had paid. While here other parents may have suffered this injury, Plaintiffs have not suffered this injury.

Nor were Plaintiffs required to and declined to pay the fees. Nor did they try to enroll in a school tuition-free that offered full-day kindergarten and were rejected. Plaintiffs enrolled their minor child in an elementary school that did not offer full-day kindergarten at all. If this Court were to provide all the relief Plaintiffs seek, their lives would be unchanged. They would still be at the school they selected, using half-day kindergarten because that school does not offer full-day kindergarten. . . .

In March 2020, Parents moved for reconsideration and for leave to amend their complaint a second time. Parents sought to amend their complaint to state they were ready and willing to enroll their son in any of 27 elementary schools in the school district offering full-day kindergarten if the district court were to order West Ada to stop assessing second half-day fees. The district court denied reconsideration because it found Parents still lacked standing. Further, it denied leave to amend the complaint because it concluded the amendment would be futile.

In May 2020, West Ada moved to dismiss. The district court granted the motion in July 2020, again for lack of standing. Parents timely appealed.

## II.  STANDARD OF REVIEW

Although both sides have sought to argue the merits of the case on appeal, this matter solely presents an issue of standing. Standing is a "question[] of law, over which this Court exercises free review." *Tucker v. State*, 162 Idaho 11, 17, 394 P.3d 54, 60 (2017) (citing *In re Jerome Cnty. Bd. of Comm'rs*, 153 Idaho 298, 308, 281 P.3d 1076, 1086 (2012)).

## III. ANALYSIS

**A. The district court erred, in part, in dismissing Parents' complaint for lack of standing.**

Standing law in Idaho substantially mirrors federal standing law. "Idaho has adopted the constitutionally based federal justiciability standard. As a sub-category of justiciability, standing is a threshold determination that must be addressed before reaching the merits." *Zeyen v. Pocatello/Chubbuck Sch. Dist. No. 25*, 165 Idaho 690, 697–98, 451 P.3d 25, 32–33 (2019) (internal citations omitted). *See also Reclaim Idaho v. Denney*, 2021 WL 3720965, at *8 (Idaho Aug. 23, 2021) ("This Court has historically looked to the United States Supreme Court for guidance on issues of standing."). Thus, although we will relax standing requirements in certain circumstances, *see Coeur d'Alene Tribe v. Denney*, 161 Idaho 508, 514, 387 P.3d 761, 767 (2015), the typical standing analysis requires a plaintiff to demonstrate the following: (1) an

injury in fact, (2) a "fairly traceable causal connection between the claimed injury and the challenged conduct[,]" and (3) "a substantial likelihood the relief requested will prevent or redress the claimed injury." *Young v. City of Ketchum*, 137 Idaho 102, 104, 44 P.3d 1157, 1159 (2002). Critical to our analysis is that "[s]tanding focuses on the party seeking relief and not on the issues the party wishes to have adjudicated." *Id*.

While injury in fact, causation, and redressability must each be established, the analysis in this case hinges on injury in fact. Without a concretely identified injury, there can be no sensible analysis of the injury's cause or whether it will be redressed by a favorable decision. With that in mind, we note that Parents' complaint raised claims based on two distinct injuries. First, Parents alleged that an *economic* injury was suffered by those patrons who paid allegedly unconstitutional fees to enroll their children in second half-day kindergarten.[2] Parents sought reimbursement of the fees collected as a remedy. Second, as guardians ad litem for their son, Parents alleged an *educational* injury because, as a direct result of West Ada's policy coupled with their inability to pay fees, their son was denied the full education they believe he was entitled to receive under Article IX, section 1 of the Idaho Constitution.[3] As a remedy, Parents sought an injunction placing their son (along with all similarly situated schoolchildren) "in line" for free full-day kindergarten. The crux of Parents' argument on appeal is that the district court erred in its standing analysis because it solely focused on the alleged economic injury to the exclusion of the alleged educational injury.

We agree that the district court's standing analysis was flawed because it evidently commingled its standing analysis as to both claims, while failing to provide a clear analysis of either. For example, although the district court took note of Parents' argument that their son stood to suffer an injury from the "permanent[] diminish[ment]" of his "educational enhancement," it did not analyze whether this was a palpable injury in fact adequate to confer standing. Instead, the district court ended its inquiry into injury in fact by merely observing that Parents did not pay kindergarten fees. Similarly, in its orders denying summary judgment,

---

[2] Parents styled their economic claim as a "takings claim" brought under 42 U.S.C. section 1983 to enforce the Fifth and Fourteenth Amendments of the United States Constitution. Because, as we explain below, Parents do not have standing to pursue a claim for an economic injury, we need not determine whether this claim was properly construed as a takings claim.

[3] We recognize that both injuries alleged by Parents would technically be *constitutional* injuries because they are grounded in Article IX, Section 1 of the Idaho Constitution. However, we have used the terms "economic injury" and "educational injury" in this opinion to distinguish between the two types of harm resulting from the alleged violation of the same constitutional provision.

reconsideration, and leave to amend the complaint, the district court emphasized that Parents did not pay kindergarten fees amid its discussion of whether Parents' proposed order would provide the prospective relief they desired and whether an amendment would prove futile. Clearly, while these facts would be relevant to the redressability analysis of an economic injury, they have no relevance in an analysis of Parents' alleged educational injury.

Nevertheless, standing is an issue reviewed de novo and we may affirm the district court's dismissal if we independently determine that Parents lack standing to pursue both their economic and educational claims. *Tucker*, 162 Idaho at 17, 394 P.3d at 60 (the Court exercises free review over questions of standing); *City of Osburn v. Randel*, 152 Idaho 906, 908, 277 P.3d 353, 355 (2012) (equating de novo review with the free review standard); *State v. Islas*, 165 Idaho 260, 270, 443 P.3d 274, 284 (Ct. App. 2019) ("The de novo standard of review is a free review of all preserved legal issues.") Therefore, we will undertake such an analysis of both claims. For the reasons stated below, we conclude that Parents have standing to pursue their educational claim, but not their economic claim.

1. **Parents have standing to pursue a claim related to their son's alleged educational injury.**

   a. *Parents have sufficiently alleged an educational injury.*

At the outset, we observe that the conflation of the economic and educational claims in the district court's analysis—though an error—is somewhat understandable. Parents' complaint focused almost exclusively on their alleged economic claim. While Parents' initial complaint alleged that "[a] [k]indergarten student who does not receive or cannot afford a full day of [k]indergarten education does not receive an appropriate, free education" under Article IX, section 1 of the Idaho Constitution, Parents did not seek any relief for that alleged deprivation until they amended their complaint a month later. Consistent with the liberal notice pleading standards embodied in the Idaho Rules of Civil Procedure, "this Court will make every intendment to sustain a complaint that is defective" so long as a plaintiff's complaint is sufficient to put an adverse party on notice of the claims against it. *Brown v. City of Pocatello*, 148 Idaho 802, 807, 229 P.3d 1164, 1169 (2010). Here, although Parents' complaint may have been inartfully pleaded, it was sufficiently clear, as amended, to put West Ada on notice of the educational claim. The complaint alleged two distinct injuries (which would require proof by distinct factual showings) and it sought two distinct forms of relief as redress: (1) a retrospective remedy for the economic injury and (2) a prospective remedy for the educational injury. Indeed,

6

the amended complaint sought an order requiring West Ada to "immediately, and in future years, place the Plaintiff child and putative Plaintiff children in line to enroll in the second half day of kindergarten tuition free." Thus, the district court should have analyzed standing separately for both the economic and educational injury claims.

Equally concerning is West Ada's choice not to address Parents' educational claim on appeal—the claim at the center of Parents' arguments before this Court. West Ada did not argue that the district court's analysis was adequate to address standing as to the educational claim, nor did it rebut any of Parents' standing arguments on appeal regarding the educational claim. West Ada's response brief did not even acknowledge Parents' position. Additionally, it neglected to advocate any alternative basis on which this Court might dismiss Parents' educational claim. *See Syringa Networks, LLC v. Idaho Dep't of Admin.*, 159 Idaho 813, 827, 367 P.3d 208, 222 (2016) ("The Court 'will uphold the decision of a trial court if any alternative legal basis can be found to support it.' "). Instead, West Ada opted merely to reiterate the district court's holding that Parents lacked standing because they did not pay fees.

Given the importance of this issue, West Ada's failure to advance a responsive argument regarding Parents' standing to assert a claim for educational relief is unfortunate. Arguments on appeal serve to advance the parties' positions *and* sharpen the issues for the Court's review. Here, the Court must proceed with little meaningful input from West Ada as to the key issue on appeal. Nevertheless, as plaintiffs below and appellants in this Court, the burden still rests with Parents to establish standing—regardless of the deficiencies in West Ada's response brief. *See Allen v. Campbell*, 169 Idaho 125, 130, 492 P.3d 1084, 1089 (2021) (recognizing, as a general rule, that an appellant bears the burden to show error in a district court's decision, regardless of deficiencies in a respondent's brief).

We also note that an appellant bears the burden to prepare an adequate record to support their position on appeal—a burden that West Ada claims Parents have not met. S*ee generally Siercke v. Siercke*, 167 Idaho 709, 714, 476 P.3d 376, 381 (2020). The "missing" items highlighted by West Ada are West Ada's motion to dismiss, Parent's motion for summary judgment, and the parties' arguments in support of those motions. West Ada offered no explanation why these were crucial for our analysis on appeal. While the ability to review these documents might have been helpful, we see no reason why they were essential. Certainly, if these items were important to West Ada's argument on appeal, it could have moved to

supplement the record. As to the motions themselves, no one disputes that they were filed and that their substance is clear from the district court's orders deciding them. As to the arguments of the parties, these might have been necessary to decide a question of waiver, if West Ada had argued that new arguments were raised on appeal. However, West Ada has made no such assertion. Thus, the record is sufficient for our review and we will consider whether standing has been established for Parents' educational claims.

### b. Parents have alleged an injury in fact.

Article IX, section 1 of the Idaho Constitution provides that "it shall be the duty of the legislature of Idaho, to establish and maintain a general, uniform and thorough system of public, free common schools." This Court has previously recognized that this provision creates an enforceable, individual right. *See Paulson v. Minidoka Cnty Sch. Dist.*, 93 Idaho 469, 463 P.2d 935 (1970). Here, Parents have alleged that the education guaranteed by Article IX, section 1 encompasses second half-day kindergarten and that their son has been deprived of that education because they cannot afford West Ada's fees. In effect, Parents contend that their son was constitutionally entitled to 13 years of free public education, yet he will only receive 12 and one-half years. If Parents can show their son was entitled to 13 full years of free education,[4] then the harm they allege will be plainly apparent. Thus, Parents have adequately alleged an injury in fact for standing purposes. *See State v. Philip Morris, Inc.*, 158 Idaho 874, 881, 354 P.3d 187, 194 (2015) (quoting *Martin v. Camas Cnty. ex rel. Bd. of Comm'rs,* 150 Idaho 508, 513 n. 3, 248 P.3d 1243, 1248 n. 3 (2011)) (holding that an injury in fact must be "palpable," which the Court has defined as "easily perceptible, manifest, or readily visible").

In holding that Parents have alleged an injury in fact for standing purposes, however, we emphasize that we express no opinion on the merits of their case. *See Bagley v. Thomason*, 149 Idaho 799, 802, 241 P.3d 972, 975 (2010) ("A party's standing to bring an action is an issue that is entirely separate from the issue of whether the party will prevail on the merits of the action."). Whether Parents can support their assertions regarding entitlement to full-day kindergarten is a matter the district court must first determine. Even if it were appropriate for this Court to decide Parents' claim on its merits at this stage of the proceedings,[5] it is not clear what Parents' theory

---

[4] As will be discussed further below, this supposition deals with the underlying merits of the claim, which we have not addressed inasmuch as the district court's decision was solely predicated on a lack of standing.

[5] In *State v. Philip Morris, Inc.*, 158 Idaho 874, 881, 354 P.3d 187, 194 (2015), we affirmed dismissal on standing grounds because "the State's failure to receive funds to which it [wa]s not entitled . . . d[id] not constitute injury."

of entitlement to free full-day kindergarten is because they have not had the opportunity to fully litigate it. However, by turns, Parents seem to suggest: (1) that the legislature has determined full-day kindergarten is a necessary component of the "general, uniform and thorough" public education system—despite the text of Idaho Code section 33-208, which provides that "[i]t shall not be compulsory for individual school districts to establish a kindergarten program . . . ."; (2) that individual districts, not the legislature, are responsible for defining the components of a "general, uniform and thorough" education—despite the constitutional text stating it is the legislature's duty to "establish and maintain" the public education system; or (3) that educational services beyond those that are constitutionally-mandated must be provided for free because the "free" requirement of Article IX, section 1 operates separately from the "general, uniform and thorough" requirement—despite the interpretative canon that all words of a provision must be construed together.

All these theories present thorny legal issues, which were not addressed by the district court below and have not been briefed or argued before this Court. Whichever theory (or theories) Parents intend to advance, they face a significant challenge. However, Parents have raised an important constitutional issue. In essence, Parents are contending, and have made at least a facial showing, that West Ada is running two separate but unequal kindergarten programs—a full-day program for those who can afford it and a half-day program for those who cannot. Such a claim, which is largely undisputed by West Ada, raises the specter of past constitutional challenges to "inherently unequal" educational systems. *Brown v. Bd. of Ed. of Topeka, Shawnee Cty., Kan.*, 347 U.S. 483, 495 (1954). The question of whether Parents can ultimately prove this claim under Idaho law has not been addressed by the district court. Accordingly, we will leave to the district to first rule on the merits of Parents' claim.

*c. Parents have adequately alleged causation.*

---

While this passage in *Philip Morris* could be understood to mean that standing cannot be premised on an allegation that one has failed to receive something to which one is not actually entitled, such a reading is too broad. In *Philip Morris*, the State challenged the jurisdiction of an arbitration panel to enter a particular order in connection with a multistate agreement settling claims between the tobacco companies and all fifty states. The district court determined that the State did not have standing to challenge the arbitration panel's jurisdiction to enter the order because the order did not decrease the funds due to Idaho under the multistate agreement. As such, the issue on the merits (jurisdiction of the panel) was an issue separate from entitlement to receive the funds. Here, the issue of entitlement to free full-day kindergarten is the core of Parents' case on the merits and it would be inappropriate for this Court to decide this issue without the district court having done so first.

"Causation requires the injury to be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.' " *Tucker v. State*, 162 Idaho at 21, 394 P.3d at 64 (quoting *Bennett v. Spear*, 520 U.S. 154, 167 (1997)). Here, there is a direct line between the challenged conduct and the harm alleged. Parents averred that they wanted their son to receive a full-day kindergarten education and the primary impediment to obtaining that education was West Ada's assessment of the allegedly illegal fees. At this stage, that is a sufficient averment of causation for standing purposes.

> *d. Parents have adequately alleged a redressable claim.*

"Standing's redressability element ensures that a court has the ability to order the relief sought, which must create a substantial likelihood of remedying the harms alleged." *Tucker v. State*, 162 Idaho at 24, 394 P.3d at 67. Before addressing redressability as an element of standing, however, we must address another closely related justiciability doctrine: mootness. "Generally, appellate review of an issue will be precluded where an issue is deemed moot." *State v. Manley*, 142 Idaho 338, 343, 127 P.3d 954, 959 (2005). An issue is moot if a favorable decision on the merits will have no "practical effect on the outcome" for the plaintiff. *Fenn v. Noah*, 142 Idaho 775, 779, 133 P.3d 1240, 1244 (2006). Counsel for Parents was hesitant to admit the fact during oral argument, but it is nearly beyond doubt that Parents' claim for prospective relief is now moot. Parents' son was enrolled in kindergarten when the district court first held that Parents lacked standing in its order denying Parents' motion for summary judgment in February 2020. Now, almost two years later, he is likely a second grader and would not benefit from an order putting him "in line" to enroll in kindergarten. However, we hold that Parents' claim falls within an exception to the mootness doctrine because, with regard to the educational claim, "the challenged conduct is likely to evade judicial review and thus is capable of repetition." *Stephen v. Sallaz & Gatewood, Chtd.*, 150 Idaho 521, 528, 248 P.3d 1256, 1263 (2011). As a practical matter, the span of a school year is too short a time for a claim such as Parents' to reach final judicial resolution. Thus, we consider whether, at the time the district court issued its decision, Parents adequately alleged a redressable injury.

As noted, the district court first held Parents lacked standing to bring their claim in February 2020, while Parents' son was a kindergarten student. The district court held that Parents' requested order would not redress their injury because Parents enrolled their son in

Chief Joseph Elementary, which did not offer full-day kindergarten, and they did not seek to compel Chief Joseph to begin second half-day instruction.[6] However, Parents declared that they were ready and willing to put their son in full-day kindergarten at another school if the district court were to grant the relief they sought. The district court offered no reason why Parents' injury was not redressable in light of their willingness to transfer their son to a different school, as long as no fees were required. While West Ada suggested at oral argument that Parents failed to establish redressability because they did not prove there was an opening at another school for their son, we are unpersuaded. Parents identified more than two dozen elementary schools offering full-day kindergarten within the district to which they were willing to transfer their son as soon as a slot became available. Redressability requires a showing that "a favorable decision is likely to redress [the] injury, not that a favorable decision will inevitably redress [the] injury." *Tucker*, 162 Idaho at 24, 394 P.3d at 67 (quoting *Beno v. Shalala*, 30 F.3d 1057, 1065 (9th Cir. 1994)). While it may not have been inevitable that Parents would have found an opening for their son at one of these schools, Parents were not required to establish that redress was inevitable. At least on its face,[7] Parents' requested relief would likely have redressed their son's alleged educational injury and West Ada has offered no persuasive argument to the contrary.

**2.** **Parents lack standing to pursue a claim for an economic injury.**

The district court correctly dismissed Parents' complaint as to their economic claim due to lack of standing. Under our traditional standing analysis, an injury must be personal to a plaintiff to support standing. *Miles v. Idaho Power Co.*, 116 Idaho 635, 641, 778 P.2d 757, 763 (1989). This is true whether asserting a claim as an individual or as a class representative. *Tucker*, 162 Idaho at 19, 394 P.3d at 62 (noting that at least one named plaintiff in a class action must meet each of the standing requirements, including injury in fact). Here, Parents did not pay kindergarten fees. Thus, they do not have standing to seek redress—on their own behalf or on behalf of others—for an economic injury they have not suffered.

---

[6] At oral argument, Parents' counsel indicated their choice not to pursue implementation of full-day kindergarten at Chief Joseph Elementary was driven by a strategic consideration—namely, Parents believed they were more likely to secure relief for their son while he was a still a kindergartener if they pursued a more limited remedy.

[7] We express no opinion whether the Parents' requested relief is consistent with the limitations on prospective remedies in the Constitutionally Based Education Claims Act (CBECA), Idaho Code section 6-2201, *et seq.*, or whether CBECA presents an impediment to redressability. Although Parents contended in their complaint that CBECA did not apply, this issue does not appear to have been addressed by the district court, nor have Parents had an opportunity to conform their requested relief to the requirements of CBECA if the determination is made that CBECA applies and modification of the relief sought is necessary.

Further, Parents cannot establish standing to pursue their economic claim under our "relaxed" standing analysis. Under this standard, the Court may choose to entertain a matter which a party would otherwise not have standing to bring where: "(1) the matter concerns a significant and distinct constitutional violation, and (2) no party could otherwise have standing to bring a claim." *Tucker*, 162 Idaho at 26, 394 P.3d at 69 (quoting *Coeur d'Alene Tribe v. Denney*, 161 Idaho 508, 514, 387 P.3d 761, 767 (2015)). Parents make the conclusory assertion that if they do not have standing, no one could; therefore, a relaxed standing analysis should apply. Parents' argument is without merit.

Parents' complaint identified a whole class of people who could challenge the constitutionality of second half-day kindergarten tuition fees: namely, the other patrons who have collectively paid West Ada $8 million dollars in such fees. Thus, relaxed standing is clearly not warranted. Therefore, because Parents cannot establish standing to pursue a claim for an economic injury, the district court did not err in dismissing their claim for reimbursement.

### B. We do not award attorney fees on appeal to either party.

West Ada asserts that it is entitled to attorney fees on appeal under three statutes: Idaho Code sections 6-918A, 12-117 and 12-121. Section 6-918A only applies in actions under the Idaho Tort Claims Act (ITCA), Idaho Code section § 6-901, *et seq.* This case was not brought under the ITCA, so it is inapplicable. The other two statutes cited by West Ada provide for the award of attorney fees to a prevailing party. *See* I.C. §§ 12-117(2), 12-121. West Ada is not the prevailing party in this appeal. Therefore, West Ada is not entitled to attorney fees on appeal.

In their opening brief, Parents claimed that they should be awarded fees on appeal under 42 U.S.C. section 1988, the private attorney general doctrine, or Idaho Code section 12-121, if they eventually prevail on the merits. West Ada responded that Parents were not entitled to attorney fees on appeal because they merely cited statutes and case law authorizing the award of fees and did not present an argument in support. *See Mulford v. Union Pac. R.R.*, 156 Idaho 134, 142, 321 P.3d 684, 692 (2014) (holding that "citation to statutes and rules authorizing fees, without more, is insufficient" for an award of attorney fees on appeal). In reply, Parents emphasized that they "have not asked, and do not ask, for [attorney fees] at this time. They merely stated that they should 'be awarded their reasonable attorney fees incurred in this appeal *should they prevail on the merits on remand in the district court*.' " (Italics in original).

To the extent that Parents' "mere[] state[ment]" warrants immediate consideration of the issue by this Court, we decline to do so because Parents mentioned fees only in passing and without any argument. *Dawson v. Cheyovich Fam. Tr.*, 149 Idaho 375, 382–83, 234 P.3d 699, 706–07 (2010) ("[I]f [an] issue is only mentioned in passing and not supported by any cogent argument or authority, it cannot be considered by this Court."). We can reconsider appellate attorney fees if this matter returns to us after it is fully adjudicated below.

## IV. CONCLUSION

For the reasons stated above, the decision of the district court on standing is reversed as to the dismissal of Parents' educational claim and affirmed as to the dismissal of Parents' economic claim. This matter is remanded for further proceedings consistent with this opinion. Pursuant to Idaho Appellate Rule 40(a), costs on appeal are awarded to Parents as a matter of course.

Chief Justice BEVAN, Justice STEGNER, and Justices Pro Tem TROUT and HORTON **CONCUR.**